19 F.3d 29
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eugene TAGALA, Petitioner-Appellant,
v.
Lloyd F. HAMES, Commissioner, State Division of Corrections
Respondent-Appellee.
 No. 93-35452.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 31, 1994.
Decided Feb. 18, 1994.
 
 Before: GOODWIN, SCHROEDER, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Eugene Tagala appeals the denial of his habeas petition, which was based on alleged violations of Miranda v. Arizona, 384 U.S. 436 (1966). Because the district court did not clearly err in finding that Tagala was not in custody during his first police interview and because the court correctly found that his second interview did not violate his right to counsel, we affirm.
 
 
 3
 Daniel Stailey was shot and killed in Homer, Alaska on October 2, 1988. Homer police suspected that Tagala might have committed the crime, and began to search the area for him.
 
 
 4
 At 7:54 am the next day, Sergeant Luther Christopher of the Homer police department spotted Tagala and pulled him over. He ordered Tagala out of the car and patted him down for weapons, but found none. Two other police officers soon arrived on the scene.
 
 
 5
 Christopher told Tagala that he had been stopped for questioning about the previous night but was not under arrest. He asked Tagala if he would accompany Officer Klamser to the police station. Tagala agreed. Tagala rode, unrestrained, in the front seat of Klamser's patrol car to the station.[1] Klamser dropped Tagala off at the front door and asked him to wait in the lobby while he parked the car. A few minutes later, Klamser arrived and escorted Tagala into the interview room. They spoke for some time, but Klamser did not advise Tagala of his Miranda rights.
 
 
 6
 Officer Klamser explained that he wanted to talk to Tagala about the shooting, and added:
 
 
 7
 I want you to know you're not under arrest. [Y]ou're free to leave if you want. [Y]ou can walk out right now if you want. And if there is anything that you don't want to talk to me about[,] just let me know and we won't talk about it. [O]kay?
 
 
 8
 During the interview, Tagala at first said that he had not shot Stailey. He subsequently admitted to the shooting but claimed that he had acted in self-defense. He explained that he had squeezed the trigger only once, but that "the recoil kicked two more times." He also claimed that he had disposed of the gun by dismantling it and throwing the pieces into the mud flats at the Homer Spit. Officer Klamser then took him to the location to try to recover the weapon, but found no sign of it. Police then dropped Tagala off at the home of a friend, where he had been living.
 
 
 9
 At 5:00 pm the same day, Sergeant Christopher again picked up Tagala, took him to the police station, and advised him of his Miranda rights. Tagala indicated that he understood his rights, but he did not request counsel.
 
 
 10
 In response to Christopher's questioning, Tagala stated that he had been in the Bayside Lounge, a local bar where he and Stailey had been seen shortly before the shooting, as part of his "usual rounds," looking for contacts with whom he could arrange drug transactions. The following exchange then took place:
 
 
 11
 Christopher: ... You said that during the evening, ah ... you were making your usual rounds, what do you mean, specifically, by "usual rounds"?
 
 
 12
 Tagala: I usually hit all the bars. And see if there's anything going on out there, taking care of transactions, or taking orders, more or less.
 
 
 13
 Christopher: Of drugs you mean?
 
 
 14
 Tagala: Yeah.
 
 
 15
 Christopher: Of the sales of drugs? Is that what you're talking about?
 
 
 16
 Tagala: Well, now I think we better, before we get into that there I think I might have to talk to an attorney on that angle. I don't want this used against me.
 
 
 17
 Christopher: On the sales of drugs you mean?
 
 
 18
 Tagala: Right.
 
 
 19
 Christopher continued to ask questions about the shooting rather than about drug transactions, and Tagala answered them. He did not mention an attorney again, and proceeded to explain his version of the events of the night of October 2. After the interview, Tagala was arrested and charged with murder. Several days later, acting on a tip, Sergeant Christopher found the murder weapon, intact, buried under a garbage can. Tagala's fingerprint was found on the gun.
 
 
 20
 Tagala was convicted of murder in the first degree and tampering with physical evidence, and was sentenced to sixty years imprisonment. His statements to Officer Klamser and Sergeant Christopher were admitted despite his motions to suppress them. The conviction was upheld on appeal, Tagala v. State, 812 P.2d 604 (Alaska Ct.App.1991), and the Alaska Supreme Court declined to review the case. Tagala then filed this habeas petition in the United States District Court for the District of Alaska. The District Court denied the petition and Tagala appealed.
 
 
 21
 We review de novo a district court's decision to deny a habeas petition. Adams v. Peterson, 968 F.2d 835, 843 (9th Cir.1992) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 1818 (1993). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies." Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). A state court's findings of fact are presumed correct. 28 U.S.C. Sec. 2254(d); Collazo v. Estelle, 940 F.2d 411, 415-16 (9th Cir.1991) (en banc), cert. denied, --- U.S. ----, 112 S.Ct. 870 (1992). This presumption does not apply to mixed findings of law and fact. Acosta-Huerta v. Estelle, 7 F.3d 139, 142-43 (9th Cir.1993). A district court's decision that a defendant knowingly and voluntarily waived his Miranda rights is a mixed question of law and fact, and is reviewed de novo. Collazo, 940 F.2d at 415.
 
 
 22
 Tagala raises two separate issues in this appeal. First, he argues that the trial court should have suppressed his statement to Officer Klamser because that he was in custody and was not apprised of his Miranda rights. Second, he contends that the trial court erred in admitting the statements he made to Officer Christopher after indicating that he "might have to talk to an attorney on that angle." He alleges that this statement constituted a request for counsel, requiring police to stop questioning him. Edwards v. Arizona, 451 U.S. 477 (1981).
 
 I. Statement to Officer Klamser
 
 23
 "A defendant is in custody when, based upon a review of all the pertinent facts, 'a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave.' " United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir.1985) (quoting United States v. Booth, 669 F.2d 1231, 1235 (9th Cir.1981)). "[W]hether a defendant is 'in custody' for purposes of Miranda is a factual determination." Krantz v. Briggs, 983 F.2d 961, 963 (9th Cir.1993). As such, the state court's determination is entitled to a presumption of correctness. Collazo, 940 F.2d at 415-16.
 
 
 24
 The state trial judge considered Tagala's claim that he was in custody during the Klamser interview, but found that he was not. The court explained:
 
 
 25
 Based on the testimony of Officer Klamser and the transcript of his interview with the defendant I am satisfied that the defendant was not in custody when the interview occurred. He was specifically informed that he was not under arrest, that he was free to leave and that he did not have to talk about anything he did not want to talk about. While he was taken to the police station in a police vehicle he was not restrained and was out of contact with any officer from the time he was let out of the car at the front of the building until Officer Klamser came to the lobby area.
 
 
 26
 Although we doubt the correctness of this conclusion, we cannot call it clearly erroneous.
 
 II. Statement to Sergeant Christopher
 
 27
 In Bruni v. Lewis, 847 F.2d 561 (9th Cir.1988), cert. denied, 488 U.S. 960 (1988), this court held that "a defendant may selectively waive his Miranda rights, deciding 'to respond to some questions but not others.' Nevertheless, if a defendant makes an equivocal request for counsel during interrogation, officials must stop further questioning, except to clarify the defendant's desire for counsel." Id. at 563 (citations omitted).
 
 
 28
 Tagala maintains that his request for counsel was equivocal, and that Sergeant Christopher was required to stop the interview at that point. Under Edwards v. Arizona, 451 U.S. 477 (1981), a defendant who has requested counsel may not be questioned further in the absence of counsel, unless the defendant initiates such a dialogue.
 
 
 29
 Alaska cites Michigan v. Mosley, 423 U.S. 96, 102-104 (1975), for the proposition that a defendant may selectively invoke his right to counsel on some topics while continuing to discuss others. The state agrees that Tagala's request for counsel was equivocal, but contends that Sergeant Christopher's query, "Of the sales of drugs you mean?" and Tagala's response, "Right," resolved the ambiguity and made clear that Tagala had invoked his right to counsel only as to questions regarding drugs. "A police initiated conversation after an equivocal request for counsel does not automatically void a subsequent confession if the police questions are fairly designed to clarify the ambiguity." United States v. Fouche, 776 F.2d 1398, 1405 (9th Cir.1985), cert. denied, 486 U.S. 1017 (1988).
 
 
 30
 When Tagala stated that he wanted to speak with an attorney on the subject of drugs, he already knew that the main purpose of his interrogation was the shooting; thus, his request for an attorney on the issue of drugs implies his willingness to discuss the shooting. We are satisfied that Sergeant Christopher's follow-up question adequately resolved any ambiguity in Tagala's request.
 
 
 31
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The record does not indicate what became of the borrowed automobile Tagala had been driving; he was subsequently driven by Officer Klamser to the home where he had been staying