■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTHUR BURRIS, Appellant. [713 NYS2d 552] —Appeal by the de-

fendant from a judgment of the County Court, Nassau County (Jonas, J.), rendered March 20, 1997, convicting him of robbery in the second degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress identification testimony and statements made by him to law enforcement officials.

Ordered that the judgment is affirmed.

It is well settled that the factual findings and credibility determinations of a hearing court are entitled to great deference on appeal, and will not be disturbed unless clearly unsupported by the record (*see, People v Prochilo,* 41 NY2d 759, 761; *People v Rose,* 204 AD2d 745, 746). The hearing minutes support the County Court's denial of those branches of the defendant's omnibus motion which were to suppress identification testimony and statements made by the defendant to law enforcement officials (*see, People v Gordon,* 242 AD2d 640).

Upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (*see,* CPL 470.15 [5]; *People v Thompson,* 220 AD2d 706). The jury was justified in finding that the defendant inflicted physical injury upon the victim pursuant to the statutory definition of robbery in the second degree (*see,* Penal Law § 10.00 [9]; § 160.10 [2] [a]; *People v Guidice,* 83 NY2d 630, 636). The victim testified that the defendant hit him in the eye and pushed him to the ground, where he was repeatedly kicked and hit. The victim sustained swelling and bleeding to his left eye and part of his face and was treated medically for his injuries, which caused him pain for about a month after the incident (*see, People v Greene,* 70 NY2d 860).

The defendant's remaining contentions are unpreserved for appellate review and, in any event, are without merit or do not require reversal. McGinity and Smith, JJ., concur.

Goldstein, J. P., concurs in the result, with the following memorandum, in which Luciano, J., joins: During the course of jury selection, the prosecutor revealed that he resorted to a practice which, although apparently legal (*see,* Executive Law § 837), warrants further scrutiny.

The prosecutor acknowledged to the court and to defense counsel that he ran background checks for prior arrests and convictions of "[a]ny people that I was going to question in the [jury] box". He further acknowledged "[t]his isn't the first time it happened, it's the first time that something came up".

Thereafter, in the robing room, two prospective jurors were

questioned about prior arrests and convictions which they failed to divulge to the court or counsel.

One juror was questioned about her prior conviction for disorderly conduct, which the prosecutor acknowledged may have been sealed. The prospective juror acknowledged she was initially charged with fraud, but was under the impression the charge was dismissed. When the prosecutor asked her "did they ask you to plead guilty to something?" she told the prosecutor to speak to her attorney.

The second prospective juror acknowledged he was charged with driving while intoxicated, and pleaded guilty to driving while impaired. The prosecutor asked if the crime involved "the consuming of alcohol" and whether the juror lost his license, and the juror responded affirmatively to those inquiries.

The prosecutor wanted to question a third juror about whether his 23-year-old son was charged with disorderly conduct in approximately 1993, resulting in an adjournment in contemplation of dismissal. However, the court refused to permit such an inquiry because the record was sealed and "if we're going to seal records and everybody is going to have the information, I don't quite understand why we have sealings at all".

The prosecutor's challenge to the first two prospective jurors for cause was denied, so he challenged those jurors peremptorily. The third juror was not challenged, and ultimately served on the jury.

The practice of running criminal record checks on prospective jurors has been challenged in other jurisdictions, but generally the practice has been upheld (*see, Tagala v State,* 812 P2d 604, 611-612 [Alaska]). Some States have held that the defense is entitled to equal access to jurors' "rap sheets", as a matter of fundamental fairness (*see, e.g., State v Goodale,* 740 A2d 1026 [NH]; *State v Bessenecker,* 404 NW2d 134, 135 [Iowa]; Annotation, *Right of Defense in Criminal Prosecution to Disclosure of Prosecution Information Regarding Prospective Jurors,* 86 ALR3d 571, 583-584).

In the instant case, the prosecutor did in fact reveal at least some of the information he obtained to the defense counsel. However, he acknowledged that "I ran every single juror that was in the box" to determine whether they had prior arrests. He argued that he was under no obligation to give defense counsel any information, but in this instance he had to discuss the information in question with both the court and defense counsel so he could "ask the jurors questions about this in as private a forum as we can find".

We need not reach the issue here of whether the defense was entitled to equal access to the "ràp sheets" of prospective jurors, because the defendant has made no showing that there was a failure to disclose material information in the instant case (*see, State v Grega,* 168 Vt 363, 721 A2d 445). However, the spectre of the prosecutor investigating the "rap sheets" of prospective jurors and their families, to me, is very troublesome.

It has been held that, as long as the prospective jurors are unaware of the results of an investigation, a prosecutor using government records available for law enforcement purposes to investigate prospective jurors does not intimidate jurors, nor discourage jury service, nor compromise the jurors' impartiality (*see, United States v Falange,* 426 F2d 930, *cert denied* 400 US 906; *United States v Costello,* 255 F2d 876, *cert denied* 357 US 937). However, in the instant case, two prospective jurors were confronted with the embarrassing details uncovered by the prosecutor and therefore were clearly aware of the investigation and its results. Indeed, it appears that the prosecutor went out of his way to intimidate these prospective jurors, to eliminate them from the jury for cause.

Code of Professional Responsibility DR 7-108 (E) and (F) (22 NYCRR 1200.39 [e], [f]) prohibits a lawyer from conducting "a vexatious or harassing investigation of" either "a member of the venire or a juror" or "members of the family of a member of a venire or a juror". The practice used here came dangerously close to violating those disciplinary rules.

The court limited the inquiry to two prospective jurors, who ultimately were challenged by the prosecutor peremptorily. The third juror was not confronted with the results of the prosecutor's investigation, and was permitted to serve. Accordingly, it cannot be said that the defendant was deprived of his right to an impartial jury.

Nevertheless, in my view, this practice warrants further regulation, either by legislation or court rule.