134 Nev., Advance Opinion 94

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Petitioner,
vs.
THE SECOND JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
WASHOE; AND THE HONORABLE
LYNNE K. SIMONS, DISTRICT JUDGE,
Respondents,
   and
FRANCISCO MERINO OJEDA,
Real Party in Interest.

No. 72456

FILED

DEC 06 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of prohibition or mandamus challenging a district court order requiring the State to disclose veniremember information to defense counsel before trial.

*Petition denied.*

Adam Paul Laxalt, Attorney General, Carson City; Christopher J. Hicks, District Attorney, Jennifer P. Noble and Joseph R. Plater, Appellate Deputy District Attorneys, Washoe County,
for Petitioner.

John L. Arrascada, Public Defender, and John Reese Petty, Chief Deputy Public Defender, Washoe County,
for Real Party in Interest.

BEFORE THE COURT EN BANC.

18-907299

*OPINION*

By the Court, STIGLICH, J.:

In *Artiga-Morales v. State*, this court held that it was not reversible error for a district court to deny a defendant's motion to compel the disclosure of veniremember background information developed by the prosecution. 130 Nev. 795, 798-99, 335 P.3d 179, 181 (2014). This petition raises a related issue: whether a district court acted without authority in *granting* a motion to compel the disclosure of prosecution-gathered criminal histories of veniremembers. We hold that the district court has authority to order the State to share criminal history information obtained from databases to which the defense did not have access. We therefore deny the State's petition.

## FACTS AND PROCEDURAL HISTORY

Francisco Ojeda awaits trial for murder in the Second Judicial District Court. In a pretrial motion, he sought an order compelling the State to disclose the criminal histories of veniremembers before jury selection. Ojeda alleged—and the State did not dispute—that courts in the Second Judicial District release a list of veniremembers to both parties several days before jury selection commences. Ojeda further alleged—and again the State did not dispute—that the State using government databases then accesses criminal histories for those veniremembers that are not available to defendants. Ojeda contended that the resulting disparity in information would put him at a disadvantage during jury selection. The State disputed this point, claiming that Ojeda would not be disadvantaged because he could obtain equivalent information either from commercial databases or through voir dire.

The district court granted Ojeda's motion. In particular, the district court ordered the State to "disclose the criminal histories the State gathers, if any, for potential venire members" to the district court on the Friday before trial, so that the court could then provide that information to Ojeda. The district court grounded its authority to order disclosure in NRS 179A.100(7)(j) (2015),[1] which requires "[r]ecords of criminal history [to] be disseminated by an agency of criminal justice" to persons authorized by "court order." The district court further explained that "it believes in the fundamental right to fair play," and that "[a]llowing only the State to use the criminal histories of potential jurors creates a disparity."

The State filed the instant petition for a writ of prohibition or mandamus, arguing that the district court did not have the authority to compel the disclosure of the veniremembers' criminal history records.

## DISCUSSION

*We exercise our discretion to consider the State's petition*

The decision to consider a writ of prohibition or mandamus lies within the sole discretion of this court. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). As an extraordinary remedy, writ relief is generally available only when no "adequate and speedy" legal remedy exists. *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008). However, this court has exercised its discretion to intervene to resolve "a question of first impression that arises with some

---

[1]NRS 179A.100 has been amended since the district court issued its order on February 12, 2016. The language which formerly appeared at section (7)(j) has been moved to section (4)(j) in the current version of the statute, but the relevant language itself has not changed. We apply the version of the statute in effect at the time of the district court's decision. 2015 Nev. Stat., ch. 546, § 3, at 3861-63.

frequency," in "the interests of sound judicial economy and administration." *Id.* at 39-40, 175 P.3d at 908. A writ of prohibition is the proper remedy to restrain a district judge from acting "without or in excess of its jurisdiction." *Smith*, 107 Nev. at 677, 818 P.2d at 851. Mandamus is the proper remedy "to control a manifest abuse or arbitrary or capricious exercise of discretion." *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931, 267 P.3d 777, 779 (2011).

Here, the State has no remedy in law. Whether Ojeda is acquitted or convicted, the State will not have the right to appeal. NRS 177.015(3). Moreover, as both parties agree, the departments in the Second Judicial District Court have adopted differing approaches to the issue of when to order disclosure of veniremember criminal histories. Considering the State's petition is therefore in "the interests of sound judicial economy and administration," *Cote H.*, 124 Nev. at 40, 175 P.3d at 908, we exercise our discretion to consider the State's petition.

*A district court has the authority to compel the State to disclose veniremember criminal histories*

The State argues that "the district court had no statutory, constitutional, or other authoritative basis to order the State to divulge its work product regarding the jury venire." We disagree.

The State is correct that the United States Constitution does not require the State to disclose veniremember criminal histories—we held as much in *Artiga-Morales*, 130 Nev. at 798-99, 335 P.3d at 181. In that case, Humberto Artiga-Morales challenged his conviction on the basis that the district court had denied his pretrial motion for the prosecutor to disclose veniremember "information gathered by means unavailable to the defense." *Id.* at 796, 335 P.3d at 180. After considering Artiga-Morales' statutory and constitutional arguments, we concluded that he "established

neither a constitutional nor statutory basis for us to reverse his conviction based on the district court's denial of his motion to compel disclosure of prosecution-gathered juror background information." *Id.* at 798-99, 335 P.3d at 181. In declining to reverse Artiga-Morales' conviction, however, we did not address the threshold issue presented here: whether the district court had the authority to *grant* a motion to compel disclosure of veniremember criminal histories.

District courts enjoy broad discretion in the realm of discovery disputes. *See Means v. State*, 120 Nev. 1001, 1007, 103 P.3d 25, 29 (2004). As the district court noted, NRS 179A.100(7)(j) (2015) allowed courts to order "an agency of criminal justice" to disseminate "[r]ecords of criminal history." That statutory basis, combined with the district court's discretionary authority to control discovery, leads us to conclude that the district court did not act "without or in excess of its jurisdiction" when it ordered disclosure. *Smith,* 107 Nev. at 677, 818 P.2d at 851. Therefore, a writ of prohibition will not lie.

*The district court did not act arbitrarily or capriciously in requiring the State to share veniremember criminal history information*

Having concluded that the district court had authority to order disclosure of the State's records, we must now determine whether the court exercised that authority in an "arbitrary or capricious" manner. *See Armstrong,* 127 Nev. at 931-32, 267 P.3d at 779-80. "An arbitrary or capricious exercise of discretion is one founded on prejudice or preference rather than on reason, or contrary to the evidence or established rules of law . . . ." *Id.* at 931-32, 267 P.3d at 780 (citation and internal quotation marks omitted).

The district court's order contains a single factual finding: "[a]llowing only the State to use the criminal histories of potential jurors

creates a disparity." The parties' stipulations support this finding. That is, the State concedes that it prepares for voir dire by acquiring veniremember information using at least one government database that is unavailable to defendants. Such unilateral access to a resource the State finds useful for jury selection indeed creates a disparity between the two sides. *See People v. Murtishaw*, 631 P.2d 446, 465 (Cal. 1981) ("[P]rosecutors in case after case will have substantially more information concerning prospective jurors than do defense counsel."), *superseded by statute on other grounds as stated in People v. Boyd*, 700 P.2d 782, 790 (Cal. 1985).

The remaining question is whether this disparity can be corrected. As the State correctly notes, our judicial system does not *require* parity of information between prosecution and defense. *See generally Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995) (acknowledging that "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense"). And while the State attempts to categorize the veniremember information as its work product, this argument was not made before the district court and is therefore inappropriately presented to this court. *See Archon Corp. v. Eighth Judicial Dist. Court*, 133 Nev., Adv. Op. 101, 407 P.3d 702, 708 (2017). However, even if we consider the State's work product argument, we do not believe the raw information from the criminal history databases contains "the mental processes of the attorney." *Floyd v. State*, 118 Nev. 156, 167, 42 P.3d 249, 257 (2002) (internal quotation marks omitted), *abrogated on other grounds by Grey v. State*, 124 Nev. 110, 118, 178 P.3d 154, 160 (2008); *see also Losavio v. Mayber*, 496 P.2d 1032, 1034 (Colo. 1972) (holding that veniremember criminal histories are not "in any conceivable way work product" (internal quotation marks omitted)).

Rather, in accessing these databases, the prosecution is merely capitalizing on its relationship with government entities that systematically acquire detailed information on individuals who enter the criminal justice system. As the quantity and quality of that information continue to increase, unilateral State access will increasingly disadvantage defendants. *See Artiga-Morales*, 130 Nev. at 800-01, 335 P.3d at 182 (Cherry, J., dissenting); *see also Tagala v. State*, 812 P.2d 604, 613 (Alaska Ct. App. 1991) ("If the state is entitled to examine criminal records of jurors for jury selection, it is fair for the defense to have access to the same information."); *Murtishaw*, 631 P.2d at 465 ("Such a pattern of inequality reflects on the fairness of the criminal process."). Thus, we agree with Ojeda, the district court, and a growing number of other states[2] that unilateral access to government databases provides the State with an unfair advantage which demands our attention.

As the State concedes in its petition, this court has the inherent authority to make procedural rules that remedy systematic unfairness in the way that judicial proceedings are conducted. *Halverson v. Hardcastle*, 123 Nev. 245, 261-62, 163 P.3d 428, 440 (2007) (recognizing this court's "inherent authority" to make rules necessary "to prevent injustice and to preserve the integrity of the judicial process"). Pursuant to that authority, we hold as follows: Upon motion by the defense, the district court must order the State to disclose any veniremember criminal history information

---

[2]*Tagala*, 812 P.2d at 613; *Murtishaw*, 631 P.2d at 465; *Losavio*, 496 P.2d at 1035; *State v. Bessenecker*, 404 N.W.2d 134, 138-39 (Iowa 1987); *Commonwealth v. Cousin*, 873 N.E.2d 742, 750 (Mass. 2007); *State v. Goodale*, 740 A.2d 1026, 1030-31 (N.H. 1999).

it acquires from a government database that is unavailable to the defense.[3] This holding does not *require* the State to access such databases; if the State refrains from doing so, then there is no disparity of information and nothing to share. Nor does this holding require the State to disclose *all* veniremember information it possesses—only criminal history information derived from databases unavailable to the defense.[4]

We return, finally, to the district court's order, which required the State to "disclose the criminal histories the State gathers, if any, for potential venire members." At first glance, this order may require the State to share veniremember criminal history information acquired from *any* source. However, read in context with the whole of the district court's order, particularly its reference to NRS 179A.100(7)(j) (2015) for the authority to order the disclosure, we believe the district court properly limited the mandated disclosure to criminal history information derived from a database unavailable to the defense. Because the district court's decision

---

[3]By limiting this holding to the criminal histories of the veniremembers, we do not share our dissenting colleague's concern that other information might be disclosed, such as addresses and medical information. Additionally, disclosure is subject to other protections imposed by the law, for example the prohibition against the posting or displaying of another's social security number. *See* NRS 205.4605(1).

[4]We recognize that the majority in *Artiga-Morales* declined to create a rule, in part because of that case's "limited record and arguments" on this issue. 130 Nev. at 799, 335 P.3d at 182. In this case, by contrast, the parties' briefings and arguments focused *exclusively* on this issue. Moreover, the procedural posture of *Artiga-Morales*—that is, a direct appeal from a judgment of conviction—made it unnecessary for this court to consider the present issue at length, since Artiga-Morales could not show that the refusal to disclose veniremember information resulted in prejudice. *Id.* at 797-98, 335 P.3d at 180-81. In the present mandamus petition, by contrast, the issue is squarely raised and ripe for our resolution.

was not based on preference or prejudice nor was it contrary to established rules of law, and the district court did not act arbitrarily or capriciously, we deny the State's petition.

## CONCLUSION

We hold that, upon motion by the defense, the district court must order the State to disclose any veniremember criminal history information it acquires from a government database that is unavailable to the defense. Because the district court had the authority to order the disclosure and because the order was not an arbitrary or capricious exercise or manifest abuse of discretion, we deny the State's petition.

_____, J.
Stiglich

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

PICKERING, J., dissenting:

The majority announces the following new criminal procedure rule: "Upon motion by the defense, the district court *must* order the State to disclose *any* veniremember criminal history information it acquires from a government database that is unavailable to the defense." (emphasis added). This broad mandatory disclosure rule has no basis in the United States or Nevada Constitutions, the Nevada statutes governing discovery in criminal cases, or any formally adopted court rule. As support, the majority invokes our "inherent authority" and district court "discretion." But these are not sound bases for the court to promulgate a procedural rule of statewide application in the context of deciding an individual case. The rule the majority promulgates infringes the legitimate privacy interests of citizen jurors and potentially conflicts with state and federal laws governing access to and use and dissemination of information compiled in confidential databases. Even assuming the court's inherent authority reaches as far as the majority perceives, it would be wiser to proceed by formal rule-making, after notice and hearing, with input from all affected. For these reasons, I respectfully dissent.

A variant of the question presented in this case came before the court four years ago in *Artiga-Morales v. State*, 130 Nev. 795, 335 P.3d 179 (2014). As *Artiga-Morales* recognized, established law holds that a defendant in a criminal case does not have a constitutional right to the prosecution's juror-background research. *Id.* at ___, 335 P.3d at 180. Nor do Nevada's criminal discovery statutes require disclosure of prosecution-developed juror-background information. *See* NRS 174.233 through NRS

174.295.[1] Because no constitutional provision, statute, or court rule mandates disclosure of such information, *Artiga-Morales* held—as most courts confronted with the question have held—that the district court did not err when it declined to order the prosecution to share its juror-background research with the defense. *Id.* at 798-99, 335 P.3d at 181-82.[2]

The defendant in *Artiga-Morales*, like Ojeda here, pressed us to create a fairness-based mandatory disclosure rule. Declining to do so, we acknowledged the disparity that exists "between the prosecution, which has ready access to criminal history and other government databases on

---

[1] To the extent Nevada's criminal discovery statutes address production of the prosecution's juror-background research, they do not license but appear to prohibit its disclosure. *Compare* NRS 174.235(2) ("The defendant is not entitled, pursuant to the provisions of this section, to the discovery or inspection of: (a) An internal report, document or memorandum that is prepared by or on behalf of the prosecuting attorney in connection with the investigation or prosecution of the case. (b) A statement, report, book, paper, [or] document . . . that is privileged or protected from disclosure or inspection pursuant to the Constitution or laws of this state"), *with* NRS 179A.100 (protecting criminal database information and placing limits on its dissemination); NRS 179A.800, Art. IV (similar).

[2] Cases finding no reversible error in a district court denying a motion to compel prosecution-assembled juror-background information include: *United States v. Falange*, 426 F.2d 930, 932-33 (2d Cir. 1970); *Doster v. State*, 72 So. 3d 50, 79-80 (Ala. Crim. App. 2010); *Charbonneau v. State*, 904 A.2d 295, 319 (Del. 2006); *Monahan v. State*, 294 So. 2d 401, 402 (Fla. Dist. Ct. App. 1974); *Coleman v. State*, 804 S.E.2d 24, 30 (Ga. 2017); *People v. Franklin*, 552 N.E.2d 743, 751 (Ill. 1990); *State v. Jackson*, 450 So. 2d 621, 628-29 (La. 1984); *Couser v. State*, 374 A.2d 399, 403 (Md. Ct. Spec. App. 1977); *State v. Hernandez*, 393 N.W.2d 28, 29-30 (Minn. Ct. App. 1986); *State v. White*, 909 S.W.2d 391, 393-94 (Mo. Ct. App. 1995); *State v. Kandies*, 467 S.E.2d 67, 76-77 (N.C. 1996); *Linebarger v. State*, 469 S.W.2d 165, 167 (Tex. Crim. App. 1971); *Salmon v. Commonwealth*, 529 S.E.2d 815, 817-19 (Va. Ct. App. 2000).

 

prospective jurors, and the defense, which does not" and so must rely on investigators, public record searches, and live questioning of the venire for its juror-background information. *Id.* at 797, 335 P.3d at 180. But while court-mandated disclosure might correct the prosecution/defense disparity, it would also impact other stakeholders, including potential jurors whose privacy interests deserve consideration and respect, and the government entities that create and maintain the databases, which compile more than arrest and conviction data. Without the input available in a formal rule-making or legislative setting, we deemed it inappropriate to create, by judicial decision, the broad disclosure rule for which Artiga-Morales advocated. *See id.* at 799, 335 P.3d at 181-82 ("[i]f policy considerations dictate that defendants should be allowed to see [prosecution-developed juror background research], then a court rule should be proposed, considered and adopted" through the court's formal rule-making process, with public debate and input on "the scope of the disparity, the impact on juror privacy interests, the need to protect work product, practicality, and fundamental fairness") (quoting *People v. McIntosh*, 252 N.W.2d 779, 782 (Mich. 1977)).

We should adhere to our holding in *Artiga-Morales*. In Nevada, completed juror questionnaires are open to the public and the press. *See Stephens Media, LLC v. Eighth Judicial Dist. Court*, 125 Nev. 849, 861-62, 221 P.3d 1240, 1249-50 (2009). Presumably, the database print-outs the prosecution now must provide the defense will likewise be publicly available—and shared by defense counsel with the defendant. A prospective juror in a criminal case can fairly expect to reveal, orally or in response to a written juror questionnaire, her arrest and conviction history, since these bear on her qualifications to serve and bias for or against the

State. *See* Lance Salyers, *Invaluable Tool vs. Unfair Use of Private Information: Examining Prosecutors' Use of Jurors' Criminal History Records in Voir Dire*, 56 Wash. & Lee L. Rev. 1079, 1109-17 (1999). But government databases collect information that goes well beyond arrests and convictions, *see* Criminal Justice Information Services, National Crime Information Center, https://www.fbi.gov/services/cjis/ncic (last visited 10/15/2018) (detailing 21 files NCIC maintains, including 14 person files and 7 property files), and can include, depending on the database and the search run, home addresses, birth dates, social security numbers, distinctive markings such as tattoos, suspected gang affiliation, weapons possession, suspected terrorist activity, and special risks to police and medical response teams posed by residents with documented mental illness or high-risk communicable diseases like AIDS. For a general discussion of juror privacy interests in this context, see *In re Essex County Prosecutor's Office*, 46 A.3d 616, 624-29 (N.J. Super. 2012).

Additionally, the government databases available to the prosecution carry statutory restrictions against access and dissemination. *See* National Crime Prevention and Privacy Compact, codified at NRS 179A.800, Art. IV(3) ("Any record obtained under this Compact may be used only for the official purposes for which the record was requested. Each Compact officer shall establish procedures, consistent with this Compact and with rules, procedures, and standards established by the Council under Article VI, which procedures shall protect the accuracy and privacy of the records . . . ."); NRS 179A.075 (creating the Central Repository for Nevada Records of Criminal History); NRS 179A.100 (restricting access to Criminal Repository records and providing, in subparagraph 2(b), that "a record of criminal history or the absence of such a record may be . . . [f]urnished by

one agency to another to administer the system of criminal justice, including the furnishing of information by a police department to a district attorney"). These restrictions were not addressed in the briefing or considered by the court, beyond the majority's passing suggestion that NRS 179A.100(7)(j) (2015) supports court-mandated disclosure. But this statute merely allows a court, when a basis therefor is shown, to order disclosure of otherwise confidential data; it does not sanction automatic disclosure to rectify a perceived imbalance between the prosecution and the defense in jury selection.

Other jurisdictions have grappled with the prosecution's ability to obtain information about prospective jurors from restricted government databases. The responses vary and range from a categorical rejection of the proposition that "personal information about prospective jurors is . . . subject to disclosure by the State," *State v. Ward,* 555 S.E.2d 251, 264 (N.C. 2001), to a court-imposed rule forbidding the prosecution from accessing database information about prospective jurors without advance court approval and then sharing it with the defense, *see State v. Bessenecker,* 404 N.W.2d 134, 139 (Iowa 1987), to a rule permitting the prosecutor to use such information without disclosing it but providing that, "[i]f the prosecutor is aware that potential jurors are not being truthful about their prior record, the prosecutor has an ethical obligation to disclose such information," *State v. Hernandez,* 393 N.W.2d 28, 30 (Minn. Ct. App. 1986), to a state statute providing that, "Notwithstanding any law or court rule to the contrary, the dissemination to the defendant or defense attorney in a criminal case of criminal history record information pertaining to any juror in such case is prohibited" except "as may be necessary to investigate misconduct by any juror." Del. Code Ann. tit. 11, § 8513(g) (2015); *see*

*Charbonneau v. State*, 904 A.2d 295, 319 (Del. 2006) (upholding § 8513(g) against constitutional challenge and rejecting argument that, as a matter of due process, if the defendant "cannot have access, then neither should the State"); *see also* Jeffrey F. Ghent, Annotation, *Right of Defense in Criminal Prosecution to Disclosure of Prosecution Information Regarding Prospective Jurors*, 86 A.L.R. 3d 571 (1978 & Supp. 2018). The majority asserts that a "growing number" of jurisdictions mandate disclosure of prosecution-developed juror-background information but the handful of cases cited do not support the claim. The majority's principal case, *People v. Murtishaw*, 631 P.2d 446 (Cal. 1981), *superseded by statute on other grounds as stated in People v. Boyd*, 700 P.2d 782, 790 (Cal. 1985), is no longer good law. *See* 5 Witkin, *Cal. Crim. Law*, § 55 (4th ed. 2012) ("The *Murtishaw* holding predates the adoption of the criminal discovery statutes, which limit discovery to that provided for by statute or mandated by the U.S. Constitution . . . .") (citing Cal. Penal Code § 1054(e) (West 1990)). And the few courts that have required disclosure by judicial decision have done so based on unique court rules providing for expansive criminal discovery, *see Tagala v. State*, 812 P.2d 604, 612 (Alaska Ct. App. 1991) (construing Alaska Crim. Rule 16(b)(3)), or state constitutional law, *see State v. Goodale*, 740 A.2d 1026, 1030-31 (N.H. 1999).

The majority invokes "inherent authority" for its mandatory disclosure rule. Robust though the doctrine is in Nevada, inherent authority "is not infinite . . . and it must be exercised within the confines of valid existing law." *Halverson v. Hardcastle*, 123 Nev. 245, 263, 163 P.3d 428, 441 (2007) (footnote omitted). "Generally, a court's inherent authority is limited to acts that are reasonably necessary for the judiciary's proper operation [*and*] *should be exercised only when established methods fail or*

Supreme Court
OF
Nevada

(O) 1947A

6

*in an emergency situation."* *Id.* (footnote omitted) (emphasis added). The court has available to it the formal rule-making process endorsed in *Artiga-Morales.* *Cf.* *State v. Second Judicial Dist. Court,* 116 Nev. 953, 11 P.3d 1209 (2000) (holding the court had inherent authority to promulgate SCR 250 through formal rule-making process to regulate criminal procedure in death penalty cases, despite that the Legislature shares this power and has passed complementary statutes). Given the complexity of the issue, the variety of responses from courts elsewhere, and the competing juror-privacy and governmental database-security concerns, there appears no justification for invoking inherent authority to fashion in an opinion denying extraordinary writ relief in an individual case a rule better crafted through public notice and hearing process. While I can envision an individual case in which, on a sufficient showing of specific need, a district court could order production by the State of juror-background information, that showing was not made, or attempted to be made, here.

I would grant the writ, not deny it, and therefore respectfully dissent.

_____, J.
Pickering