COMMONWEALTH *vs.* JOSEPH COUSIN.

Suffolk. May 10, 2007. - September 24, 2007.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, & CORDY, JJ.

*Criminal Offender Record Information. Jury and Jurors. Practice, Criminal,*
Jury and jurors, Investigation of jurors. *Constitutional Law,* Double jeopardy.

Where the judge at a criminal trial declared a mistrial based on "manifest
   necessity" after having excused three deliberating jurors on the ground that
   they had not disclosed their criminal records in response to the juror
   questionnaires (thus leaving insufficient jurors to continue deliberations),
   principles of double jeopardy did not bar further prosecution of the defendant,
   given that the prosecutor was authorized under G. L. c. 6, § 172, to inquire
   into the jurors' criminal records for purposes of determining the jurors'
   qualifications and their impartiality [815-819], and the record supported
   the judge's finding that the prosecutor did not do so with the intent to
   cause a mistrial [819-820]; and given further that the judge was warranted
   in discharging the three jurors under the circumstances [820-823]. IRELAND,
   J., concurring.

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on July 25, 2005.

The case was considered by *Greaney,* J.

*Willie J. Davis* for the defendant.

*John P. Zanini,* Assistant District Attorney (*Joshua Wall,* As-
sistant District Attorney, with him) for the Commonwealth.

The following submitted briefs for amici curiae:

*Martha Coakley,* Attorney General, & *Pamela L. Hunt,* As-
sistant Attorney General, for the Attorney General.

*Ruth T. Dowling, Stephen G. Huggard, Hilary B. Dudley,
Nina L. Pickering,* & *Emily M. Smith* for Lawyers Committee
for Civil Rights Under Law of the Boston Bar Association &
others.

*Gregory I. Massing,* Special Assistant Attorney General,
*Catherine P. Bailey,* & *Erin Deveney* for Executive Office of
Public Safety and Security.

*John M. Thompson* for Committee for Public Counsel Services.

COWIN, J. At a murder trial, the judge excused three deliberating jurors on the ground that they had not disclosed their criminal records in response to the juror questionnaire. As insufficient jurors then remained to continue deliberations, the judge determined that "manifest necessity" required her to declare a mistrial. To determine whether principles of double jeopardy now bar further prosecution of the defendant, we must decide whether the prosecutor was authorized to obtain the jurors' criminal records, whether it was proper to bring them to the court's attention in the circumstances of this case, and whether the judge was warranted in dismissing the jurors.[1]

The defendant was indicted for murder, possession of a stolen motor vehicle, and unlawful possession of a sawed-off shotgun, and was tried with a codefendant. When jury deliberations commenced, there were twelve deliberating and three alternate jurors. After five days of deliberations, the foreperson was discharged for personal reasons: a substitute juror was added and the jury were instructed to begin deliberations anew. Four days later, the jury returned verdicts of not guilty for the codefendant. On the following day, the jury informed the court that they were deadlocked with respect to the charges against the defendant. Before the judge responded to this information, the prosecutor notified the court that his inquiry had revealed that five jurors had criminal histories that had not been disclosed in their responses to juror questionnaires.

The defendant moved for a mistrial, claiming that the prosecutor had acted improperly by checking the jurors' criminal records. The motion was denied. After questioning three of the jurors regarding their failure to disclose their criminal histories, the judge discharged all three.[2] At this point, only eleven people

[1] We acknowledge the amicus briefs of the Attorney General; the Committee for Public Counsel Services; the Criminal History Systems Board and the Executive Office of Public Safety; and the American Civil Liberties Union of Massachusetts, the Lawyers Committee for Civil Rights Under Law of the Boston Bar Association, Harvard Law School's Charles Hamilton Houston Institute for Race and Justice, the Massachusetts Alliance to Reform CORI, and the Massachusetts Law Reform Institute.

[2] The defendant agreed to the discharge of the jurors, but continued to object

remained on the jury. With the agreement of the parties, the judge discharged the jury and declared a mistrial.

The defendant then filed a motion to dismiss the indictments on double jeopardy grounds. After the trial judge denied the motion, the defendant petitioned a single justice of this court for an order barring a retrial. The petition was denied and the defendant appealed to the full bench. Following oral argument, we requested further briefing on several issues regarding criminal record checks of jurors.[3] We conclude that the prosecutor did not act improperly in obtaining the jurors' criminal records and bringing them to the court's attention, that dismissal of the jurors who failed to disclose their criminal histories was proper, and that principles of double jeopardy do not apply to bar further prosecution of the defendant.

*Background.* The facts of the underlying crime are not relevant in determining the issues before us. Thus, we set forth only those events that led to the declaration of the mistrial. Our recitation is derived largely from the judge's helpful memorandum of decision, which relies on undisputed facts unless otherwise noted. We have supplemented the judge's findings with other undisputed facts that appear in the record.

The case began with an extensive voir dire of more than 200 potential jurors. The voir dire extended for three days. Because anticipated trial testimony would involve gang members, as

---

to the inquiry into the jurors' criminal records. We assume arguendo that the jurors' discharge was over the defendant's objection.

[3]The specific issues on which we requested further briefing were "whether, and if so, under what procedures, it is permissible for the Commonwealth in a pending criminal case to conduct a criminal background check of jurors through a Criminal Offender Record Information (CORI) search. See G. L. c. 6, § 172. Among the questions involved are whether court approval is required before a CORI check may be conducted; whether, assuming the Commonwealth is authorized to conduct a check, it is required to inform a defendant that such a check is being conducted; and at what stage of the proceedings it would be permissible to conduct such a check — for example, whether it is permissible to conduct CORI checks of (1) the entire jury venire before empanelment; (2) the selected jurors before the parties indicate that they are content with the jury; (3) the impaneled jurors after they have been sworn but before they begin to deliberate; and/or (4) the jurors during their deliberations. If CORI checks are permissible or may be judicially authorized in any or all of these circumstances, is it necessary or appropriate for the judge to inform the affected jurors that CORI background checks are to be made of them, and if so, at what point in the proceedings."

well as attitudes toward cooperating witnesses and the conduct of the police investigation of the murder, the voir dire attempted to determine, inter alia, that no seated juror had what the judge termed "inappropriate attitudes" toward the Boston police department, law enforcement or cooperating witnesses. After the voir dire, trial proceeded without incident until the deliberations stage. We have previously set forth all of the relevant events that occurred during the deliberations, except that, before the jury returned their verdict acquitting the codefendant, the jury foreperson wrote a note to the judge stating his view that some jurors believed the defendants had been "set up" by the Boston police department. The foreperson informed the judge that he had not discussed the note with the other jurors.[4] Eventually, the jury sent a note to the court indicating they were deadlocked as to the defendant.

By the time defense counsel arrived at the court to address the issue of a response to the latter note, the prosecutor had provided the session clerk with the criminal offender record information (CORI) of the deliberating jurors and the two alternates, which he asked the clerk to provide to the judge and defense counsel. These records detailed the significant criminal histories of five of the jurors. None of the five had revealed these histories in response to the following question on the juror questionnaire: "Describe briefly any involvement (past or present) as a party or a victim in a civil or criminal case: you or any member of your immediate family."[5,6]

---

[4]With the parties' consent, the judge sealed the note and reminded the foreperson to follow the instructions that she had given the jury previously regarding juror communication with the court. As previously stated, the foreperson was later discharged (because of a long-standing trip) and replaced by an alternate. No party has argued that the foreperson's note to the judge necessitated a mistrial. See Commonwealth v. Mahoney, 406 Mass. 843, 853-855 (1990).

[5]Four of the five jurors had checked "None" in response to this question. The fifth indicated that she had been a victim of a rape, but did not reveal her record.

[6]The form of this question has been changed, and now provides:

"YOUR EXPERIENCE WITH THE LAW (Please check all that apply)

"Have you or anyone in your household or family ever had any of the following experiences with the law?" [ ] No [ ] Yes

Juror A,[7] a thirty-two year old woman, had a seven-page criminal record with fifty-three entries, including an outstanding warrant and convictions in 1995 for nine larcenies by check and for a compulsory insurance violation. She was in default on a 2002 complaint for operating after suspension of license.

Juror B had a three-page record with twenty-two entries, including a 1971 conviction for assault and battery on a police officer and a 1971 Superior Court trial that ended in an acquittal. He was a sixty-three year old man, and the last entry on his record was in 1987.

Juror C, a twenty-nine year old woman, had five charges against her, all in 1999, and all of which were ultimately dismissed. One of the charges was for assault and battery on a police officer; another charge on a separate date was for assault and battery. A charge of being a disorderly person was "continued without a finding" and ultimately dismissed. This juror also had defaulted on numerous court appearances.[8]

Based on the criminal records, the prosecutor requested a voir dire of the five jurors to determine whether material misrepresentations had been made. He contended that such misrepresentation on the questionnaire, completed under the pains and penalties of perjury,[9] deprived the parties and the court of information needed in order to decide whether a juror

---

"[ ] Been arrested? [ ] Been charged with a crime? [ ] Been convicted of a crime? [ ] Been a crime victim? [ ] Been sued? [ ] Filed a lawsuit? [ ] Been a witness in a civil/criminal case? [ ] Been seated on a jury? [ ] Been served with a court order? [ ] Sought a court order (restraining order, stay-away order, injunction, etc.)?

"If 'Yes,' please describe . . . ."

See generally G. L. c. 234A, § 22.

[7]To protect the privacy of the jurors, they are referred to herein by letter only.

[8]The CORI material revealed that a fourth juror had faced charges for shoplifting and marijuana possession, which had been dismissed, and that an alternate juror had been arrested in a matter that was eventually dismissed. No voir dire of the latter two jurors was conducted, for reasons explained *infra.*

[9]In fact, the prosecutor's assertion was incorrect. The juror questionnaires in this case do not contain any "written declaration that [they were] made under the penalties of perjury." G. L. c. 268, § 1A. The form states that "a wilful misrepresentation or omission of a material fact in [the] questionnaire" is a crime that subjects the violator to a fine. Contrary to the defendant's argu-

should be seated. The prosecutor also maintained that it was reasonable to assume that falsification of the questionnaire was an indication that the juror could not follow the rule of law in the charge and could not be fair and impartial during deliberations. While conceding that the information on the five jurors' questionnaires was contradicted by the CORI, defense counsel moved for a mistrial because the prosecutor had checked these records. The motion was denied.

The judge then conducted a voir dire. When juror A was shown her record, she did not indicate that it was inaccurate. Out of the hearing of the juror, defense counsel suggested that the woman be advised of her privilege under the Fifth Amendment to the United States Constitution and her right to counsel before further interrogation regarding her completion of the questionnaire. The judge stated that doing so would automatically require dismissal of the juror. Without further questioning and with both counsels' acquiescence, the judge excused juror A on the ground that her conduct was "an affront to the integrity of the process."

The parties and the attorneys agreed that the court should proceed with the voir dire, and that a total of three jurors acknowledging their criminal records would be sufficient to conclude the matter. Jurors B and C were questioned and acknowledged their records, and both parties agreed that the two jurors had to be excused. At this point, there were only eleven jurors remaining, and the judge allowed the defendant's motion for mistrial, concluding that the "fundamental fairness of the process has been affected by the misrepresentations of the juror questionnaires." Defense counsel agreed that there was "no alternative . . . to . . . a mistrial," but did not waive his original ground for a mistrial, i.e., the conduct of the prosecutor in obtaining the CORI. The judge stated that her decision to declare a mistrial was based on the material misrepresentations to the court, especially in view of the extensive voir dire questioning about juror attitudes towards the Boston police department, gangs and cooperating witnesses. The judge stated that the jurors' actions prevented informed decisions as to whether the

ment, nothing in the judge's decision turned on this distinction.

jurors should be excused for cause or whether a peremptory challenge should be exercised.

*Standard of review.* We do not disturb an order of a single justice denying relief under G. L. c. 211, § 3, unless there is an abuse of discretion or other error of law. *Victory Distributors, Inc.* v. *Ayer Div. of the Dist. Court Dep't,* 435 Mass. 136, 137 (2001).

*Discussion.* The double jeopardy clause of the Fifth Amendment to the United States Constitution, and comparable protections under our statutory and common law, generally prevent a criminal defendant from being tried more than once for the same offense. See *Commonwealth* v. *Cassidy,* 410 Mass. 174, 176 (1991). However, under one exception to this rule retrial is permitted where a mistrial is occasioned by "manifest necessity." *Id.* at 177, quoting *United States* v. *Perez,* 9 Wheat. (22 U.S.) 579, 580 (1824). Additionally, where, as here, the defendant requests a mistrial, retrial is not barred unless there has been "governmental conduct . . . intended to 'goad' the defendant into moving for a mistrial."[10] *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 311 (1984), quoting *Oregon* v. *Kennedy,* 456 U.S. 667, 676 (1982). The defendant claims here that the double jeopardy principle bars a retrial because (1) the prosecutor's inquiry into the jurors' criminal records was government misconduct intended to goad the defendant into moving for a mistrial; and (2) there was no "manifest necessity." We reject the defendant's contentions.

a. *Inquiry into the jurors' criminal records.* The defendant argues that the prosecutor was not authorized by the CORI statute, G. L. c. 6, § 172, or other applicable law to inquire into the jurors' criminal records. The defendant argues further that the prosecutor's decision to obtain the jurors' criminal records and bring them to the court's attention during the course of deliberations was calculated to cause a mistrial and avoid an acquittal of the defendant. We conclude, to the contrary, that the prosecutor was authorized to check the records and bring them to the court's

---

[10]Retrial is also prohibited where government misconduct works "irremediable harm" so that "[the defendant] will be unable to obtain a fair trial in any subsequent proceeding." *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 312 (1984). No such claim is made here.

attention, and that the trial judge was warranted in finding that the prosecutor did not do so with the intent to cause a mistrial.

The CORI statute permits access to CORI by, inter alia, "criminal justice agencies," G. L. c. 6, § 172, and it is undisputed that the district attorney's office is such an agency. See G. L. c. 6, § 167.[11] The only limitation the statute places on criminal justice agencies' access to CORI is that it be "limited to that [extent] necessary for the actual performance of the criminal justice duties of criminal justice agencies."[12] G. L. c. 6, § 172. Pursuant to the statute, prosecutors routinely obtain CORI in the performance of a variety of their "criminal justice duties." See, e.g., *Whirty* v. *Lynch*, 27 Mass. App. Ct. 498, 501 (1989).

Inquiring into the criminal records of jurors in a criminal case for the purposes of determining their qualifications to serve[13] and their impartiality fits squarely within the "criminal justice duties" of prosecutors. Representing the Commonwealth in criminal trials is a quintessential prosecutorial function, of which the selection of a qualified and impartial jury is an integral part. We have recognized that the prosecution has a legitimate interest in securing "a jury not unfairly biased in favor of acquittal." *Commonwealth* v. *Soares*, 377 Mass. 461, 483 (1979), citing *Swain* v. *Alabama*, 380 U.S. 202 (1965), and *Hayes* v. *Missouri*, 120 U.S. 68 (1887). To that end, we often have allowed the Commonwealth to inquire into the backgrounds of jurors, including their criminal histories. See *Commonwealth* v. *Smith*, 350 Mass. 600, 601-603 (1966); *Commonwealth* v. *Sher-*

---

[11]Criminal justice agencies are "those agencies at all levels of government which perform as their principal function, activities relating to (a) crime prevention, including research or the sponsorship of research; (b) the apprehension, prosecution, adjudication, incarceration, or rehabilitation of criminal offenders; or (c) the collection, storage, dissemination or usage of criminal offender record information." G. L. c. 6, § 167.

[12]Significantly, the statute allows criminal justice agencies to obtain an individual's CORI without the prior knowledge or consent of that individual: it exempts them from the requirement of "submit[ting] to the [criminal history systems] board an acknowledgment that such inquiry will be undertaken, signed by the person who is the subject of such inquiry." G. L. c. 6, § 172, fifth par.

[13]One such qualification is that the potential juror not have been convicted of a felony within the past seven years or currently be serving a penal sentence. G. L. c. 234A, § 4. Here, none of the jurors with undisclosed criminal histories was automatically disqualified under this provision.

*man,* 294 Mass. 379, 385 (1936); *Commonwealth* v. *DiStasio,* 294 Mass. 273, 281-282 (1936); *Commonwealth* v. *Cero,* 264 Mass. 264, 273-275 (1928). See also *Commonwealth* v. *Caldwell,* 45 Mass. App. Ct. 42, 43 (1998). Whereas in the past, this information was obtained by the Commonwealth through police interviews of potential jurors,[14] see *Commonwealth* v. *Smith, supra,* that function is now served by CORI. We will not readily assume that, in enacting a CORI statutory scheme that allows prosecutors to access CORI pursuant to their "criminal justice duties," the Legislature intended tacitly to overrule our precedents approving of the Commonwealth's obtaining jurors' criminal background information. See *Commonwealth* v. *Maloney,* 447 Mass. 577, 589 (2006).

Indeed, the Legislature has indicated the relevance of jurors' criminal backgrounds to their ability to be impartial by requiring that the juror questionnaire inquire into a juror's "present or past involvement as a party to civil or criminal litigation." G. L. c. 234A, § 22. The relevance of jurors' criminal histories to their service also has been noted in appellate decisions. See, e.g., *Commonwealth* v. *Juliano,* 358 Mass. 465, 467-468 (1970); *Commonwealth* v. *Caldwell, supra* at 46-47.

The defendant argues that, because G. L. c. 234A, § 33, permits the jury commissioner, courts, and clerks of court to access CORI for the purpose of verifying juror qualifications, but does not mention prosecutors, that prosecutors are thereby expressly prohibited from examining jurors' CORI. Yet a statute must be interpreted according to "the mischief or imperfection to be remedied and the main object to be accomplished." *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College,* 445 Mass. 745, 749 (2006), quoting *Hanlon* v. *Rollins,* 286 Mass. 444, 447 (1934). The purpose of G. L. c. 234A, § 33, is to ensure access to potential jurors' CORI by the courts and the jury commissioner, whose right to obtain the information might otherwise have been in doubt.[15] The provision contains no language that would indicate a legislative intent to limit prosecu-

---

[14]Pursuant to G. L. c. 234, § 24A, parties are no longer permitted to contact potential jurors directly.

[15]Several amici contend that this interpretation would render G. L. c. 234A, § 33, superfluous because courts already had access to CORI at the time of

tors' access to jurors' CORI, particularly in light of our precedents approving of the Commonwealth's access to jurors' criminal backgrounds. See *Commonwealth* v. *Callahan*, 440 Mass. 436, 441 (2003) (Legislature presumed to be aware of prior state of law as set forth by decisions of this court).

Our conclusion that the statute contemplates that prosecutors are entitled to examine jurors' criminal records is not a radical one; numerous other jurisdictions routinely permit such access.[16] Because we have held that "information about prospective jurors . . . should be as available to the defendant as to the district attorney," *Commonwealth* v. *Smith, supra* at 603, if the prosecutor checks jurors' criminal records, which ordinarily should be done at the start of a trial, the information must be shared immediately with defense counsel.[17]

As the concurring opinion correctly observes, we do not set forth a comprehensive set of procedures to be followed in all cases in which criminal record checks of jurors are requested. We have not ignored this issue. Rather, we believe it is most sensible at this point to leave the matter to the sound discretion

the statute's enactment. Even assuming that were the case, we have recognized that the Legislature sometimes uses subsequent enactments to clarify the law. See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 103 (1983).

[16]See, e.g., *United States* v. *McIntosh*, 380 F.3d 548, 557-558 (1st Cir. 2004); *United States* v. *Falange*, 426 F.2d 930, 932-933 (2d Cir.), cert. denied, 400 U.S. 906 (1970); *Tagala* v. *State*, 812 P.2d 604, 611-613 (Alaska Ct. App. 1991), cert. denied, 513 U.S. 946 (1994); *People* v. *Murtishaw*, 29 Cal. 3d 733, 765-767 (1981); *Losavio* v. *Mayber*, 496 P.2d 1032, 1033-1035 (Colo. 1972); *Saylor* v. *State*, 686 N.E.2d 80, 83 (Ind. 1997); *State* v. *Goodale*, 144 N.H. 224, 227-231 (1999); *Salmon* v. *Commonwealth*, 32 Va. App. 586, 591 (2000). But see *State* v. *Bessenecker*, 404 N.W.2d 134, 137-139 (Iowa 1987) (prosecutor must obtain court order to access juror's criminal record).

[17]See *State* v. *Goodale, supra* at 230 (holding that "fundamental fairness requires that official information concerning prospective jurors utilized by the State in jury selection be reasonably available to the defendant"). See also, e.g., *Tagala* v. *State, supra* at 612-613; *People* v. *Murtishaw, supra*; *Losavio* v. *Mayber, supra*; *State* v. *Bessenecker, supra*. But see, e.g., *State* v. *Kandies*, 342 N.C. 419, 437-438 (1996) (prosecutor need not disclose jurors' criminal records to defense). Cf. *Salmon* v. *Commonwealth*, 32 Va. App. 586, 591, n.2 (2000) (court did not reach question).

Defense counsel receives the CORI material as an officer of the court. It cannot be used except in connection with the case and must be returned to the court after the completion of empanelment. See G. L. c. 6, § 172 (*a*) (permitting access to CORI only to extent "necessary for the actual performance" of duties requiring such access). See also 803 Code Mass. Regs. § 3.08 (2005).

of the trial judge, until experience indicates whether additional constraints are necessary. It does not appear to us that a standardized procedure is necessary at this time, and any attempt to impose one might generate more questions than it would resolve.

The Attorney General has called to our attention G. L. c. 234A, § 67, which allows parties to obtain the identifying information (name, address and date of birth) of jurors called for service at least ten days in advance of their scheduled appearance. Neither party has addressed this statute. Given our holding that prosecutors are entitled to examine jurors' criminal records, the Commonwealth might be able to conduct criminal record checks of prospective jurors prior to trial. Indeed, many of the problems that arose in this case — interruption of the trial proceedings, questions as to the prosecutor's motive in checking the records at a particular point in time — could have been avoided by using this procedure. If a prosecutor obtains the criminal records of prospective jurors prior to trial, his duty to disclose the records to defense counsel does not accrue until the start of empanelment. See *id.* We delay the imposition of disclosure to defense counsel in this circumstance because the exact date of criminal trials (and therefore the precise jurors to be called) is often uncertain, and we seek to avoid unnecessary publication of jurors' criminal backgrounds.

Finally, the defendant argues that, assuming that the prosecutor was entitled to inquire into the jurors' CORI, the manner in which he did so evidences an intent to cause a mistrial so as to avoid an acquittal. He contends that this bars a retrial under *Oregon* v. *Kennedy*, 456 U.S. 667, 676 (1982). In support, the defendant points to the timing of the Commonwealth's production of the jurors' criminal records, which occurred after the jury had acquitted the codefendant and after they had reported that they were deadlocked as to the defendant. The question whether the prosecutor's actions were intended to provoke a mistrial presents a question of fact to be determined by the trial judge from the attendant circumstances. *Id.* at 675. The defendant bears the burden of proving that the prosecutor acted with the intent to cause a mistrial, *Commonwealth* v. *Andrews*, 403 Mass. 441, 448 (1988), and a finding supported by the evidence that there was no such intent "is the end of the matter for purposes of the Double Jeopardy Clause of the Fifth Amendment." *Oregon*

v. *Kennedy, supra* at 679. See *United States* v. *McIntosh*, 380 F.3d 548, 557 (1st Cir. 2004) ("prosecutorial error or even prosecutorial harassment that results in a mistrial will not unlatch the double jeopardy bar in the absence of the intent to cause a mistrial").

We give deference to the determination of the trial judge that there was no prosecutorial intent to cause a mistrial. See *Commonwealth* v. *Swafford*, 441 Mass. 329, 337 (2004) (where judge's finding of fact not clearly erroneous, it warrants deference). In ruling on the defendant's motion to dismiss the indictment on double jeopardy grounds, the trial judge stated, "Although the prosecutor may well have recognized that a mistrial ultimately might result from the background checks, I do not find that he conducted those checks for the purpose of obtaining a mistrial . . . ." Rather, the judge found that the prosecutor conducted the checks out of concerns about the impartiality of the jurors, especially in light of the original foreperson's note indicating that certain jurors believed the defendant had been set up by the police. The judge's findings in this regard are supported by the record. There is no suggestion here that, for instance, the prosecutor knew earlier of the jurors' undisclosed criminal histories and only revealed them after he began to fear an acquittal.

b. *Discharge of jurors who failed to disclose criminal histories.* The defendant's second argument is that, since there was no "manifest necessity" for the mistrial, the double jeopardy principle bars a retrial. See *Commonwealth* v. *Lowder*, 432 Mass. 92, 99 (2000) (if judge declares mistrial over defendant's objection "without a manifest necessity for the act, the Commonwealth is barred on double jeopardy grounds from retrying the defendant"). Of course, once the judge had dismissed jurors A, B, and C, a mistrial was required because insufficient jurors remained to render a verdict. See Mass. R. Crim. P. 19 (b), 378 Mass. 888 (1979) (permitting verdict by less than full jury only with defendant's consent).[18] Yet, if it were error for the judge to discharge these jurors in the first place, then the rationale for the mistrial would be invalidated. Thus, we consider whether

---

[18]The defendant did not consent to a verdict rendered by less than a full jury.

the judge was warranted in discharging the three jurors once she became aware that they had significant criminal records that were not disclosed on their respective juror questionnaires. We conclude that the judge's actions were justified.

General Laws c. 234A, § 39, states that "[t]he court shall have the discretionary authority to dismiss a juror at any time in the best interests of justice," but may "excuse and discharge a juror participating in jury deliberations after a hearing only upon a finding of an emergency or other compelling reason." Similarly, G. L. c. 234, § 26B, states that "[i]f, at any time after the final submission of the case by the court to the jury and before the jury has agreed on a verdict, a juror dies, or becomes ill, *or is unable to perform his duty for any other good cause shown* to the court, the court may order him to be discharged . . ." (emphasis added).[19] Pursuant to these statutes, numerous cases have upheld a trial judge's decision to discharge a deliberating juror, including specifically where, as here, a juror has failed to disclose a criminal record. *Commonwealth* v. *Caldwell,* 45 Mass. App. Ct. 42, 46-48 (1998). See *Commonwealth* v. *Robinson, ante* 1, 9-11 (2007); *Commonwealth* v. *Freeman,* 442 Mass. 779, 787-789 (2004); *Commonwealth* v. *Swafford, supra* at 336-337; *Commonwealth* v. *Garrey,* 436 Mass. 422, 430-431 (2002). Cf. *Commonwealth* v. *Connor,* 392 Mass. 838, 846 (1984) (juror's "mere assertion of inability to abide by his oath does not establish the 'good cause' required by the statute").[20]

In the present case, the judge was warranted in dismissing the

---

[19]The cases involving discharge of a deliberating juror have employed the "best interests of justice," "good cause," and "compelling reason" standards interchangeably. *Commonwealth* v. *Rodriguez,* 63 Mass. App. Ct. 660, 673 (2005). See, e.g., *Commonwealth* v. *Swafford,* 441 Mass. 329, 337 & n.9 (2004) (judge's decision to discharge deliberating juror correct under both "good cause" and "best interests of justice" standards); *Commonwealth* v. *Garrey,* 436 Mass. 422, 431 (2002) (judge had both "good cause" and "compelling reason" to discharge deliberating juror). "Good cause" aptly describes the appropriate standard.

[20]The defendant argues that the present case is controlled, not by our statutes and cases governing discharge of a deliberating juror, but by the standard in *McDonough Power Equip., Inc.* v. *Greenwood,* 464 U.S. 548, 556 (1984), which asks (1) whether "a juror failed to answer honestly a material question on voir dire, and (2) whether "a correct response would have provided a valid basis for a challenge for cause." That standard, however, applies to a

three jurors who failed to disclose their criminal histories. Once the jurors had verified that the information in the records pertained to them, the judge permissibly could have drawn the inference that the jurors had concealed their criminal histories purposefully, and thus could not be expected to be impartial or to follow the court's instructions. At least two of those excused, jurors A and B, had criminal histories so extensive (seven- and three-page records with fifty-three and twenty-two entries, respectively) as to make it unlikely that they simply forgot to disclose them. Nor can we agree with the defendant that the request to "[d]escribe briefly any involvement (past or present) as a party or a victim in a civil or criminal case" is so ambiguous or confusing that it must have misled the jurors into failing to disclose their criminal histories.[21] That these jurors also kept silent about their criminal histories during a lengthy voir dire that focused largely on jurors' attitudes toward law enforcement supports an inference that their failure to reveal their criminal histories was purposeful.

The defendant claims that there should have been an inquiry to determine whether the jurors' misrepresentation of their criminal records was intentional or inadvertent. However, as the judge noted in her written decision and defense counsel himself acknowledged at the time, this was not practicable, because wilful misrepresentation on a juror questionnaire is a criminal offense, G. L. c. 234A, § 32, and the jurors could not be examined on that subject without risking a violation of their privilege against self-incrimination.

Furthermore, even if the jurors' failure to provide accurate information regarding their criminal records were inadvertent, it deprived the parties and the court of the ability to make an intelligent decision whether to excuse them for cause or to exercise a peremptory challenge. It is true that this could be said even where a juror has been inaccurate as to a collateral detail. See *McDonough Power Equip., Inc.* v. *Greenwood,* 464

party seeking to overturn a jury verdict and obtain a new trial on the ground that a juror made a misrepresentation in voir dire. *Id.* at 555-556. It is based on the policy favoring the finality of jury verdicts, and thus has no application to the present case, where no verdict has yet been rendered.

[21]The questionnaire language has since been made even more explicit. See note 6, *supra.*

U.S. 548, 555 (1984) (no need for new trial to "recreate the per-emptory challenge process" where juror in products liability case failed to disclose son's unrelated accident). Here, however, where the juror questionnaire included a specific question on the subject of a juror's involvement with the courts, and where so much of the voir dire turned on attitudes toward law enforcement, a juror's prior experience with the criminal justice system was an essential detail central to the ability to be impartial. Indeed, jurors B and C failed to disclose prior charges of assault and battery on a police officer, which doubtless would have supported a valid challenge for cause, despite the jurors' being asked directly on voir dire about anything that might affect their attitudes toward the police. In short, the judge had "good cause" for dismissing the three jurors. G. L. c. 234, § 26B.

*Conclusion.* The prosecutor was authorized to check the jurors' CORI and to present the records obtained to the attention of the court during jury deliberations. The trial judge was warranted in finding that the prosecutor did not act with the intent to cause a mistrial, and in dismissing three of the jurors who had failed to disclose criminal histories. Thus, double jeopardy does not bar the defendant's retrial. The order of the single justice denying the defendant's petition for relief is affirmed.

*So ordered.*


IRELAND, J. (concurring). I concur in the court's conclusion that, pursuant to G. L. c. 6, § 172, a prosecutor has the author-ity to conduct criminal offender record information (CORI) checks of jurors, and that there was a manifest necessity for the judge to declare a mistrial in this case once she determined that three jurors made material misrepresentation on their juror questionnaires. I do so because there was no showing that the judge's finding that the prosecutor in this case did not time his CORI check of deliberating jurors to goad the defendant into moving for a mistrial was clearly erroneous, and nothing in the record suggests otherwise. However, I write separately because I am concerned about the timing of CORI checks and feel there should be procedures in place governing it. The court does not

address this issue, although the court solicited amicus briefs asking for guidance about whether there should be procedures governing the timing of a CORI check, *ante* at 811 n.3. This issue has come before single justices of this court on other occasions, and I believe that guidance is necessary. See, e.g., Commonwealth *vs.* Vasquez, SJ-2005-0105 (Mar. 11, 2005).

In my view, there should be procedures created that limit the time in which a prosecutor could conduct a CORI check of jurors and bring it to the attention of the trial judge. The findings of the judge in this case notwithstanding, I am not comfortable with a prosecutor waiting until jurors are deliberating before conducting a CORI check.

There are a number of ways to set up such a procedure, but I believe that, at the very latest, a prosecutor must undertake a CORI check before he or she declares that the Commonwealth is satisfied with an empanelled jury.[1] In fairness, I also believe that a judge should stay the jury's being sworn in until such a check could be conducted. The prosecutor should be allowed to appeal the denial of the prosecutor's request for a stay to a single justice of this court, pursuant to G. L. c. 211, § 3. This procedure would not foreclose a check on jurors later in the trial. Should a prosecutor decide not to conduct a CORI check before jurors are sworn, and information comes to light during a trial that causes concern, the trial judge could order such a check (or other inquiry) sua sponte or on the motion of the other party.

I am disappointed that the court does not address the issue of the timing of a CORI check. The one safeguard, according to the court, *ante* at 819, is that prosecutors must share information concerning jurors' criminal records immediately with defense counsel. Accordingly, I concur.

---

[1] General Laws c. 234A, § 67, provides, in relevant part, that no later than ten days before the scheduled appearance by jurors in a particular trial, the office of the jury commissioner is required to provide the clerk of the court with a list of the jurors expected to report for duty. The list is to contain the names, addresses, and date of birth of each potential juror, and may contain other information the jury commissioner deems appropriate. The list is available for inspection by, among others, the parties and counsel, unless a court orders otherwise.